UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Howard GILBREATH,
Defendant–Appellant.

No. 91–5158.

United States Court of Appeals,
Tenth Circuit.

Nov. 8, 1993.

Barbara S. Blackman, Cherner and Blackman, Denver, CO, for defendant-appellant.

F.L. Dunn, III, U.S. Atty. and Neal B. Kirkpatrick, Asst. U.S. Atty., Tulsa, OK, for plaintiff-appellee.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Thomas Gilbreath was charged in a fifteen count indictment with one count of conspiracy to commit wire fraud and fourteen counts of wire fraud. The charges arose out of a scheme concocted by Mr. Gilbreath to induce women to send him money. Mr. Gilbreath obtained information about his victims through a magazine for Christian singles and called them purporting to be interested in companionship, fellowship, and/or matrimony. Mr. Gilbreath, sometimes with the assistance of codefendant Steven Young, would represent that in order to get together with his victims, he needed money for car repairs, traffic fines, bail, or other expenses. In actuality, Mr. Gilbreath and Mr. Young were cellmates in a state correctional center serving very long prison terms.

Several days into a jury trial, Mr. Gilbreath agreed to plead guilty to the conspiracy count and two counts of wire fraud. He was subsequently sentenced to seventy-one months in prison with three years of supervised release, and ordered to pay restitution in the amount of $35,033.08. On appeal, Mr. Gilbreath asserts through his appointed counsel that the lower court abused its discretion in imposing restitution. Mr. Gilbreath has also filed several *pro se* motions with this court contending that his previous counsel was ineffective in failing to preserve his appeal rights, that the sentencing court improperly used his prior convictions in calculating his sentence, and that his guilty plea was in essence involuntary because he was misled about his potential sentence. As we discuss below, we hold Mr. Gilbreath's *pro se* arguments to be without merit. However, we vacate the order of restitution and remand to the district court for further proceedings.

I.

Mr. Gilbreath contends that the district court erred in imposing restitution when the record contains no evidence that he has present assets or future capacity to pay restitution with legally obtained funds.[1] In sen-

---

1. Mr. Gilbreath did not raise this argument below. The government does not contend that this failure precludes our consideration of the issue on appeal, and asserts that our standard of review is de novo. *See* Brief of Aplee. at 3–5. In any event, given the policy implications of this

tencing Mr. Gilbreath, the district court adopted the factual statements set out in the presentence report. The report reveals that Mr. Gilbreath, who is fifty-nine years old, is presently serving a 101 year sentence in state prison.[2] It appears that his federal incarceration will not begin until his current prison term is complete. *See* 18 U.S.C. § 3584(a) (1988) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); U.S.S.G. § 5G1.3(a) (sentence for offense committed while defendant serving term of imprisonment shall run consecutively to undischarged term). Mr. Gilbreath has spent twenty-five of the last thirty-seven years in prison. He completed the ninth grade before being confined for juvenile convictions and allegedly received the equivalent of a high school education while a juvenile inmate. He has no vocational skills, and when not incarcerated has been employed by his brother-in-law as a bricklayer at minimum wage.

■ This court has held that a restitution order "must be consistent with a defendant's ability to pay." *United States v. McIlvain,* 967 F.2d 1479, 1481 (10th Cir.1992); *see also United States v. Kelley,* 929 F.2d 582, 587 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991); *United States v. Dunning,* 929 F.2d 579, 581 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 224, 116 L.Ed.2d 182 (1991); *United States v. Clark,* 901 F.2d 855, 857 (10th Cir.1990). Although indigency does not preclude an order of restitution, the order must be supported by at least some indication that a defendant has assets or earning potential. *See United States v. Rogat,* 924 F.2d 983, 985 (10th Cir.), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

■ In ordering restitution here, the court relied on testimony offered by the defense that Mr. Gilbreath ran an illegal loan shark-

ing operation in prison which generated considerable income. The apparent purpose of this evidence was to explain Mr. Gilbreath's source of funds and to persuade the jury that he had no motive to undertake the fraudulent scheme charged. The court stated at sentencing:

The evidence clearly showed here in this case that Mr. Gilbreath, both he and his friends testified that he always has money. He always has various forms of rackets going in the institution wherever he is, and he has people help him obtain money for the rackets apparently.

He has money to loan out at rather substantial interest rates. As I recall, there was some discussion here of his loaning money through some of these gentlemen that were his enforcers in the penitentiary. As I heard the evidence, it was for 50 percent a week, I think. So if you loan $100 today, within a week from today you expect to get $150 back, and with that kind of a business deal, Mr. Gilbreath, you've got a lot of money. There's not a banker in the world that wouldn't love that kind of program, because that will figure out on an annual basis of three or four thousand percent.

So because of the fact that the evidence showed you had substantial monies of your own, and always do have, the Court will impose a cost of imprisonment here of $1,492 a month. You will be expected to pay for your cost of imprisonment. Also, when you get out, for supervised release for that three-year period you will be expected to pay your $115.30 per month supervised release.

If you have the money that you have, which the evidence showed that you always have money, and apparently your sister keeps for you and places it in various bank accounts, I think it would be appropriate to assess those and let you start paying for

---

issue discussed infra in text, we believe our consideration of the merits is appropriate. *Cf. United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (court may exercise discretion to notice plain error that affects fairness, integrity or public reputation of judicial proceedings).

2. The addendum to the presentence report states that state correctional officials, when asked by the federal probation officer, were reluctant to give an anticipated release date for Mr. Gilbreath due to his lengthy sentence and disciplinary record.

some of your own incarceration instead of the public having to do it all the time.

Also, the Court will impose restitution, full amount of the scheme, of $35,033.08. The restitution amount will be that total sum.

Transcript of Sentencing Proceedings had on October 3, 1991 (Sentencing) at 13–14.

Mr. Gilbreath argues that a restitution order which the sentencing court knows will be paid with funds from future illegal conduct is contrary to the rehabilitative goal Congress intended restitution to serve. The government counters that while restitution is intended to promote rehabilitation, it is also intended to make victims whole. The government contends that because Mr. Gilbreath has admitted he has assets, the order is proper even though his income will be derived from future illegal activity.

The statutes underlying the sentencing guidelines recognize four purposes of sentencing: punishment, deterrence of criminal conduct, protection of the public from further crimes by the defendant, and rehabilitation. *See* H.R.Rep. No. 1030, 98th Cong., 2d Sess. 50, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3233. We sympathize with the sentencing court's desire that Mr. Gilbreath be required to compensate the victims of his fraud. Nonetheless, a restitution order which would be paid from the proceeds of future illegal activity undeniably frustrates the deterrent and rehabilitative goals Congress intended to promote. It would, of course, be another matter if the order were to be satisfied with the money Mr. Gilbreath has already obtained from the victims of his fraud. However, it appears from the record that the district court anticipated the restitution would be satisfied from future loan sharking activities. Moreover, in advising Mr. Gilbreath at his sentencing of his right to appeal, the court stated:

Further, you would have the right to have a lawyer in order to do that. If you can't afford one, the Court will see to it that you have one appointed at the public expense for that purpose. Also, the Court will see to it that you are provided a transcript of the record that is appropriate for any appeal at the cost to the public.

Again, I should make the comment, though, if you've got the money that was testified to at this trial and your friends stated that you have, then I really seriously question the need of appointing you a public lawyer to do it. I would think you would have the money to provide your own counsel and provide your own transcript. But if you don't have that, we'll see to it that the public pays that, as I stated.

Sentencing, at 15–16.

As we have indicated, Mr. Gilbreath was subsequently granted in forma pauperis status by the district court and is proceeding on appeal with appointed counsel. Consequently, the district court must have concluded that Mr. Gilbreath does not have the assets the court initially assumed at sentencing that he had. If Mr. Gilbreath in fact has neither present assets nor the future capacity to generate income through legal undertakings, the restitution order could only be satisfied by the income from future illegal conduct. Under those circumstances, the restitution award would frustrate the goals set by Congress and constitute an abuse of discretion. Because the record is unclear on this issue, we vacate the restitution order and remand for further proceedings to clarify the state of Mr. Gilbreath's finances.[3]

## II.

The issues raised by Mr. Gilbreath in his *pro se* motions to this court need not detain us long. First, Mr. Gilbreath asserts that his prior counsel was ineffective because she failed to protect his appeal rights. This claim is without merit. Mr. Gilbreath has had new counsel appointed on appeal, and has had the opportunity to fully exercise his right to appeal.

Mr. Gilbreath also alleges that the lower court erred in using his alleged prior convictions in sentencing, and that his trial counsel was incompetent in stipulating to those convictions. In this regard, Mr. Gilbreath as-

---

3. Mr. Gilbreath also challenges *pro se* the order requiring him to pay the costs of imprisonment and supervised release. These issues should also be addressed by the district court on remand.

serts only that the prosecution failed to meet the requirements set out in *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.1989), *cert. denied,* 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990). In *Dunn,* the court held unconstitutional a methodology adopted by the Kentucky courts under which, once the state produces a bare record of conviction upon a guilty plea, the conviction is presumed valid. The burden then shifts to the defendant to produce evidence of an irregularity in the plea procedure. The Supreme Court has recently considered the Kentucky procedure at issue in *Dunn* and has concluded that the presumption of validity is not constitutionally infirm. *See Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). Accordingly, *Dunn* is no longer good law and Mr. Gilbreath's argument in reliance upon it is without merit. *See, e.g., Mansfield v. Champion,* 992 F.2d 1098, 1103–05 (10th Cir.1993) (rejecting similar argument in light of *Parke v. Raley* ).

Finally, Mr. Gilbreath contends that he agreed to plead guilty on the understanding that he would be sentenced to a maximum of five years in prison, and that instead he was given a prison sentence of five years and eleven months. The transcript of the change of plea proceeding reveals that the court asked Mr. Gilbreath if it were clear to him that he could be sentenced to a maximum of fifteen years in prison, and Mr. Gilbreath agreed that he understood the possible maximum sentence to be fifteen years. Rec., vol. IV at 12. Accordingly, Mr. Gilbreath's argument in this regard is meritless.

The order of restitution is vacated and the case is remanded to the sentencing court for further proceedings in light of our discussion. In all other respects the conviction and sentence are affirmed.