**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth E. HADDOCK, Defendant–
Appellant.**

**No. 94–3239.**

United States Court of Appeals,
Tenth Circuit.

March 9, 1995.

---

Samuel Rosenthal of Curtis, Mallet–Prevost, Colt & Mosle, Washington, DC, for defendant-appellant.

Kurt J. Shernuk, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with him on the brief), Kansas City, KS, for plaintiff-appellee.

Before ANDERSON and HOLLOWAY, Circuit Judges, and DOWNES,* District Judge.

HOLLOWAY, Circuit Judge.

Defendant–Appellant Kenneth E. Haddock appeals from the district court's judgment and sentencing order which required him to pay $76,732 in restitution to the Central National Bank, Herington Branch. Appellate jurisdiction is proper under 28 U.S.C. § 1291.

---

* Honorable William F. Downes, United States District Judge for the District of Wyoming, sitting by designation.

## I

This is Haddock's third appeal in this case. In *United States v. Haddock*, 956 F.2d 1534, *modified on reh'g*, 961 F.2d 933 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992) (*Haddock I* ), we affirmed Haddock's conviction on eight of the ten counts of the indictment. The underlying facts are set out in that opinion and need not be repeated.

In *United States v. Haddock*, 12 F.3d 950 (10th Cir.1993) (*Haddock II* ), we affirmed the district court's denial of Haddock's post-conviction claim of ineffective assistance of counsel, but remanded for resentencing because the district court had miscalculated the amount of actual loss and had therefore miscalculated the total offense level under the Sentencing Guidelines. After thoroughly analyzing the transactions involved, we calculated the amount of actual loss to be approximately $76,000, justifying a five level increase rather than a seven level increase in the offense level under the applicable 1987 Sentencing Guidelines. This made the proper sentencing range 24 to 30 months, rather than 30 to 37 months. *Id.* at 964.

On remand the district court sentenced Haddock to a prison term of 27 months and a period of supervised release of three years. The court also ordered Haddock to pay $76,-732.00 in restitution to the Central National Bank, Herington Branch. The court ordered that the restitution be paid in installments through the Inmate Financial Responsibility Program of the Federal Bureau of Prisons, with any balance remaining to be paid during the period of supervised release in installments and the amount of the monthly payments to be determined by the Probation Office.[1] In this third appeal Haddock challenges only the order for restitution.

## II

### A. Issues raised.

Haddock raises three issues regarding the order of restitution. First, he argues that the order of restitution must be reversed because the district court failed to take into account whether Haddock had the ability to pay the restitution. He also asserts that there was no factual basis to support a conclusion that Haddock had the ability to pay, had such a finding been made. Second, Haddock argues that the judge's order for restitution in the third sentencing was vindictive because the court had not ordered restitution in the previous two sentencings before his challenges to those rulings. Third, Haddock asserts that the payee designated in the restitution order, Central National Bank, Herington Branch (CNB), was not a victim of the crime; that he was entitled to corrections on the amount of loss; therefore the district court erred in ordering the restitution required to CNB.

### B. Ability to pay restitution.

■ Under 18 U.S.C. §§ 3663 and 3664, a sentencing court may order that a convicted defendant make restitution to the victims. In deciding whether to order restitution, the sentencing court must "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a).

■ "Absent an abuse of or failure to exercise discretion, we will not disturb an order of restitution." *United States v. Clark*, 901 F.2d 855, 856 (10th Cir.1990). We review the district court's factual findings underlying a restitution order under the clearly erroneous standard. *United States v. Rogat*, 924 F.2d 983, 984–85 (10th Cir.), *cert. denied*, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

In *Rogat*, we said that "[t]he statute requires only that a sentencing judge consider the defendant's financial condition; the judge need not specifically recite his findings regarding that condition." 924 F.2d at 986. However, we have also held that "a restitution order 'must be consistent with a defen-

---

1. We discussed the Inmate Financial Responsibility Program in *United States v. Williams*, 996 F.2d 231, 234 (10th Cir.1993).

dant's ability to pay.'" *United States v. Gilbreath,* 9 F.3d 85, 86 (10th Cir.1993) (quoting *United States v. McIlvain,* 967 F.2d 1479, 1481 (10th Cir.1992)). An order of restitution "must be supported by at least some indication that a defendant has assets or earning potential." *Gilbreath,* 9 F.3d at 86. And "[w]hen there is substantial ambiguity as to whether the judge considered the statutory factors, specific factual findings in the record may be required for effective appellate review." *Rogat,* 924 F.2d at 986.

Here, the district court ordered restitution of $76,732 to CNB. Haddock argues that the district judge refused to consider Haddock's ability to pay and held that proving that he could not pay "can come at a different time." Appellant's Brief at 16 (citing Joint Appendix [J.A.] at 149). Alternatively, he urges that even if the judge had not refused to make findings on his ability to pay, the restitution order would have to be reversed because there was no basis for concluding that Haddock could make such restitution. Appellant's Brief at 17.

The presentence report contains conflicting statements regarding Haddock's financial condition. The report was originally prepared in January 1991, and had been revised following each of Haddock's two prior appeals. However, the revised report indicates that no additional financial information had been requested since December 1990. It is unclear why the probation office did not seek to update this information in light of the fact that the financial information was considered inadequate when the original report was prepared. The report notes a substantial discrepancy between Haddock's financial condition as reported to the probation office in a December 1990 interview and as represented by Haddock to a bank in connection with a loan application made about July 6, 1990. In view of that discrepancy, the report in paragraph 86 states: "Based upon the preceding information, an accurate assessment of the defendant's financial condition is not possible, however, the information provided by Mr. Haddock to financial institutions reflects the ability to pay a fine."

As revised for the 1994 sentencing, the presentence report acknowledged the staleness of the information obtained more than three years before and the fact that significant changes had occurred in Haddock's circumstances in the interim. Most significantly, Haddock had been convicted of murder in state court in 1993 in connection with the death of his wife in 1992, is presently serving his state prison sentence, and has been in custody since November 27, 1992. Thus, the latest revised presentence report states in paragraph 87:

> A substantial amount of time has passed since the preparation of the financial profile contained in this report. *The specific financial condition of Mr. Haddock is unknown at this time and he may not now possess the ability to pay a fine.* This opinion is based on the lack of adequate information to determine specific assets and liabilities incurred by the defendant for representation in a recent criminal prosecution and the appeals of the federal conviction.

J.A. at 267 (emphasis added).

Thus the record indicates that there was no reliable basis for the sentencing court to conclude that Haddock had assets from which to pay the restitution. Neither was there evidence concerning Haddock's future earning ability. It would have been unreasonable to conclude that Haddock could return to his area of previous employment, banking, following this conviction. His only other prior work experience was in teaching, a vocation from which we likewise must expect that he will be excluded in light of this conviction and the murder conviction.

■ In addition, during the sentencing hearing the district judge stated:

> All the Court is finding—that the Court at this time is finding that the loss has been determined by the 10th Circuit Court of Appeals, and I'm ordering restitution based on that finding. *The matter of proving that you cannot pay it or that you should not pay it, that, perhaps, can come at a different time.*

J.A. at 149 (emphasis added). This statement strongly suggests that Haddock's abili-

ty to pay was not taken into account before imposing the order of restitution.[2]

During Haddock's first sentencing the judge had stated, "I'm also concerned that funds be available to support the defendant's children and to help the defendant's wife with her support of the family, so I'm not going to assess a fine in this case." *Id.* at 75–76. At the latest sentencing on July 1, 1994, Haddock's children were 19, 17, and 14 years old. Notwithstanding the reasonable inference from the evidence that Haddock's financial condition could only have worsened in the more than three years since the sentencing report had originally been prepared, and in spite of his previously expressed concern about Haddock's children, the sentencing judge made only general statements indicating that these important factors had been assessed. At the July 1994 sentencing the court said:

> [A]fter consideration of the amount of loss sustained, the questionable financial resources of the defendant, the future earnings ability of the defendant, and the financial needs of the defendant and his dependents, he should be required to make restitution as hereinafter ordered, so ... the defendant is ordered to pay restitution to Central National Bank, Herington Branch, in the amount of [$]76,732. Restitution is to be paid through the Federal Bureau of Prisons Inmate Financial Responsibility Program while [defendant is] incarcerated, and following incarceration, any balance shall be paid as set out in the special conditions of supervised release.

**2.** We think it unlikely that the district judge completely overlooked his duty to determine Haddock's ability to pay, notwithstanding his comment that "proving you cannot pay it ... can come at a different time." As the district judge no doubt realized, pursuant to section 3663(g), failure to complete payments within the specified time could lead to revocation of the period of supervised release or to a finding of contempt. However, that subsection also provides that in the event of such failure, in considering the appropriate action to be taken the court "shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay."

... [I]n view of the 10th Circuit remand and the financial uncertainty of the defendant, no fine will be imposed.

*Id.* at 120–21.

In its brief, the government notes that the presentence report found that Haddock had a college education and continuous work history, but concedes that his current financial condition is unclear given his recent state conviction in Kansas and resulting life sentence. Haddock's financial situation has not been reassessed since his state conviction. Consequently, no meaningful analysis on this record of his ability to pay is possible.

The government also notes that the district court stated that it had considered "the questionable financial resources of the defendant and his future earning capacity as well as the financial needs of his dependents." Appellee's Brief at 5. However, as to Haddock's ability to pay restitution, this seems to be belied by the court's own statement at sentencing that "[t]he matter of proving that you cannot pay it or that you should not pay it, that, perhaps, can come at a different time." J.A. at 149. Further, although the court indicated it had considered the needs of Haddock's dependent children, the record is devoid of information on which such consideration could be given.

In sum, there is simply too little in the record before us to demonstrate that the sentencing court adequately considered Haddock's ability to pay. We cannot discern the basis for any conclusion which may have been implied that Haddock had the ability to make the restitution ordered. This lack of support for the court's implicit conclusion

Probably this procedure was what the district court envisioned, and other courts have affirmed restitution orders made in contemplation of the possibility that the defendant might ultimately be relieved of some of the financial responsibility if the defendant was unable to pay the full amount despite good faith efforts. *United States v. Blanchard,* 9 F.3d 22, 23–25 (6th Cir.1993); *United States v. Ruffen,* 780 F.2d 1493, 1495–96 (9th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986). Nevertheless, this possibility for "remittitur" if Haddock ultimately proves to be unable to pay the full amount of restitution ordered cannot substitute for the statutorily required initial consideration of his ability to pay.

that Haddock could pay the restitution requires remand for further consideration. *United States v. Mitchell,* 15 F.3d 953, 958 (10th Cir.1994) (finding of ability to pay could not be implied where no underlying facts would support such a finding); *see also Rogat,* 924 F.2d at 985 (possibility that restitution can be paid cannot be based solely on chance).[3]

For these reasons, we will vacate the order for restitution and remand for a determination on the defendant's ability to pay and for consideration of the relevant factors, including the needs of his dependent children.

### C. Was the order of restitution vindictive?

■ Defendant Haddock argues that there is a presumption of vindictiveness where, as here, the sentencing judge fails to set forth the basis for his departure from the earlier sentence. Defense counsel says he explicitly called the judge's attention to the fact that he had twice earlier ruled that no fine or order of restitution would be imposed; that nothing had changed other than the fact that defendant had successfully appealed his sentence twice, without the government contesting the failure to order restitution. Brief of Appellant at 20–21; J.A. at 122–23. Defendant relies on *North Carolina v. Pearce,* 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969), and *United States v. Sullivan,* 967 F.2d 370, 374 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992), and *cert. denied,* —— U.S. ——, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993), contending that when a judge imposes a more severe sentence on a defendant after a new trial, the reasons for doing so must affirmatively appear to overcome a presumption of vindictiveness; that here the presumption was not addressed by the judge and the statements by him only heighten the view that he intended to punish the defen-

dant for exercising his constitutional rights by his appeals. Brief of Appellant at 23.

The government responds that the vindictiveness argument is frivolous and finds no support in the record; that the judge had said the reason for not having ordered restitution was based on the difficulty of calculation of the loss at the time of the original sentencing; that here the sentence of imprisonment was reduced although an order for restitution was imposed; and that in any event the restitution order was not challenged below for vindictiveness so that we could only review for plain error. Brief of Appellee at 6.

While the vindictiveness contention was not developed with legal citations, defendant's counsel did point out that at the first two sentencings, no restitution was ordered; that defendant then appealed twice on grounds felt to be meritorious and obtained some relief; that nothing had changed on defendant's ability to pay or on issues that bear on restitution; and there was no reason for departing from the orders entered twice so that no restitution should be ordered as before. J.A. at 122–23, 126.

We feel the issue was sufficiently raised so that defendant may argue its merit here. However, since we are vacating the order for restitution on other grounds and are remanding for a determination on ability to pay and for consideration of the factors bearing on restitution, we do not know whether such an order for restitution will ultimately be imposed. We thus think it premature and improper to pass on the vindictiveness claim now and express no view on its merits.

### D. Was Central National Bank a proper recipient of restitution?

■ In the sentence imposed, the trial judge ordered that defendant Haddock make restitution to the CNB as payee in the amount of $76,732. The order specified that

3. On several other occasions we have vacated orders for restitution where there was insufficient evidence that the prospects for payment were realistic. *See, e.g., United States v. Patty,* 992 F.2d 1045, 1052–53 (10th Cir.1993); *United States v. McIlvain,* 967 F.2d 1479, 1481–82 (10th Cir.1992); *United States v. Grimes,* 967 F.2d 1468, 1473 (10th Cir.), *cert. denied sub nom.*

*McGlynn v. United States,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992); *United States v. Kelley,* 929 F.2d 582, 587 (10th Cir.), *cert. denied,* 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991); *United States v. Dunning,* 929 F.2d 579, 581 (10th Cir.), *cert. denied,* 502 U.S. 879, 112 S.Ct. 224, 116 L.Ed.2d 182 (1991); *United States v. Clark,* 901 F.2d 855 (10th Cir.1990).

the payment be made in installments paid through the Federal Bureau of Prisons' Inmate Financial Responsibility Program and with any balance to be paid as set out in the special conditions of supervised release. J.A. at 20.

■ Defendant Haddock's brief, pp. 23–24, argues that if CNB is a recipient of restitution, it would have a windfall, there being no evidence it was a victim; that Haddock was denied any opportunity to offer evidence regarding the amount of any "loss" to any victim. We will address the question whether CNB could properly be designated as recipient of restitution. However, the objection that Haddock was denied any chance to offer evidence on the amount of the loss is foreclosed. In *Haddock II,* we determined the actual loss to be approximately $76,000, 12 F.3d at 963–64, and this amount we hold is the law of the case under the general rule. *See United States v. Martinez,* 987 F.2d 920, 923 (2d Cir.1993).

The government brief makes no response to the contention that CNB was not shown to be a "victim" and the issue is troublesome. Haddock's brief, p. 24, recognizes that CNB purchased assets which may have come from the banks involved in the loan transactions on which Haddock was convicted. The Presentence Report, ¶ 32, notes that due to its having virtually no capital to protect its depositors, the Bank of White City was forced to merge with the Bank of Herington. The White City Bank was merged and White City lost its independently chartered bank and was left with a branch office of the Bank of Herington. J.A. at 253. Haddock testified that CNB is a Junction City bank "that purchased the Bank of Herington and White City as it was through the Topeka bank [which] actually took control of the bank after I left the bank." J.A. at 139.

Mr. Schweer, Probation Officer for the District of Kansas, testified that he gathered information for the Presentence Report. He referred to the Bank of White City or the Bank of Herington as the "victim bank." J.A. at 133. In *Haddock II* we determined

the actual loss on Count Six to the White City Bank was $51,732. 12 F.3d at 962. On Count Nine, we determined that the actual loss to the White City Bank resulting from Haddock's fraud should include $25,000 due to misrepresentations. *Id.* at 962–63. Thus the actual loss we determined of approximately $76,000 was related to losses of the White City Bank.

The Bank of White City's assets were apparently acquired by CNB. This is a reasonable inference from Haddock's testimony that CNB purchased the Bank of Herington and the Bank of White City. J.A. at 139. We feel this makes proper the position taken by Mr. Farris of CNB that CNB should be the payee of any restitution imposed by the court in sentencing Mr. Haddock. J.A. at 147. We are persuaded that CNB can properly receive the restitution payments since it acquired the claims of the defunct Bank of White City. *See United States v. Smith,* 944 F.2d 618, 621–22 (9th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992) (FSLIC treated as proper recipient of restitution due to assignment of assets including claims); *United States v. Rochester,* 898 F.2d 971, 980 n. 7 (5th Cir.1990) (same); *United States v. Ryan,* 874 F.2d 1052, 1053 (5th Cir.1989) (same).

In sum, we hold that designating CNB as payee of restitution by Haddock was not in error.

### III

Accordingly, the restitution order entered on July 1, 1994, is **VACATED.** The case is **REMANDED** to the district court for a determination on the defendant Haddock's ability to pay restitution, including the relevant factors governing that determination.[4]

---

4. On October 21, 1994, Haddock, filed a motion to supplement the record pursuant to Fed. R.App.P. 10(e). Haddock seeks to submit two

letters from an accountant, T. Teal Dakan, related to the amount of loss suffered by CNB. In the July 28, 1994 letter to AUSA Shernuk, Dakan

discussed the acquisition of failed banks from the FDIC. However, he admits that he is "not familiar with the details of the CNB acquisition." July 28, 1994 letter at 2. Therefore, the only purposes for supplementing the record would be to put in Dakan's general knowledge of how failed banks are acquired, and his view on the actual losses, which have been determined. In effect, Haddock is attempting to introduce expert testimony through the back door and to reopen the loss issue. The letters are neither necessary nor helpful to the resolution of this appeal, and the motion to supplement is denied.