**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles William KUNZMAN,
Defendant–Appellant.**

No. 94–1084.

United States Court of Appeals,
Tenth Circuit.

April 26, 1995.

John M. Haried, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., with him on the brief), Denver, CO, for plaintiff-appellee.

Philip L. Dubois of Philip L. Dubois, P.C., Boulder, CO, for defendant-appellant.

Before ANDERSON, McWILLIAMS, and ALARCÓN,** Circuit Judges.

ALARCÓN, Senior Circuit Judge.

Charles William Kunzman appeals from a judgment of conviction following a trial by jury. Kunzman seeks reversal of the conviction on multiple grounds. In the alternative, he seeks remand of the case for resentencing on the ground that the district court's order requiring him to pay $331,756.09 in restitution constitutes an abuse of discretion.

Kunzman was charged along with his wife, Murleen Kay Kunzman (Kay Kunzman), and his stepson, Randall Lee Meyers (Randy Meyers), in multiple counts with fraud and money laundering stemming from a real estate investment scheme. The defendants established K & K Mortgage Company and began offering limited partnership investments in Real Estate Mortgage Investment Conduits (REMICs) in October, 1987. Rather than investing REMIC monies in mortgages secured by real estate, the monies were used by the Kunzmans to pay personal and business expenses. The defendants conducted a Ponzi scheme, in which money from later investors was used to pay monthly interest and principal payments to earlier investors. The scheme eventually collapsed and the Kunzmans filed bankruptcy on July 10, 1990. Kay Kunzman and Randy Meyers pled guilty prior to trial. The jury convicted Kunzman of 22 counts of securities fraud, mail fraud, wire fraud, money laundering, and bank fraud.

We affirm the conviction because we conclude that none of Kunzman's grounds for reversal are meritorious. We also affirm the district court's restitution order because we find no abuse of discretion.

** Honorable Arthur L. Alarcón, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

## I. PRETRIAL MOTIONS

### A. *Motion for Bill of Particulars*

Kunzman joined in his co-defendants' pretrial motions for bills of particulars as to each securities fraud count. In addition, he submitted his own motion for a bill of particulars requesting additional specificity as to the money laundering and bank fraud counts in which he was named. The district court denied the motions for bills of particulars.

Kunzman contends that the district court erred in denying his motion for a bill of particulars because the second superseding indictment did not specify sufficiently the acts allegedly performed by him. He argues that this lack of specificity hindered his ability to prepare his defense as well as his ability to limit the evidence admitted at trial.

■ We review a district court's denial of a motion for a bill of particulars for abuse of discretion. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense...." *United States v. Levine*, 983 F.2d 165, 166–67 (10th Cir.1992). The ·denial of a motion for a bill of particulars "will not be disturbed unless the defendant shows 'that he was actually surprised at trial and thereby incurred prejudice to his substantial rights.'" *Id.* at 166 (citations omitted).

■ The second superseding indictment described the defendants' scheme in detail and provided dates, places and the persons involved in various transactions. Kunzman does not dispute that he was provided with full discovery of the government's materials prior to trial. This was sufficient to inform Kunzman of the charges against him and to enable him to prepare his defense. *See id.* at 167 (no abuse of discretion where indictment described scheme in detail and set forth instances of mail fraud and defendant had access to government's file prior to trial). Moreover, Kunzman has not demonstrated, or even argued, that he was actually surprised at trial and therefore incurred prejudice to his substantial rights. *See United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir.1992) (court affirmed denial of motion for bill of particulars where government provided full disclosure and defendant failed to show actual surprise at trial). Accordingly, we find that the district court did not abuse its discretion in denying Kunzman's motion for a bill of particulars.

### B. *Motion to Dismiss for Lack of Interstate Nexus and Jurisdiction*

Prior to trial, Kunzman moved to dismiss the money laundering and securities fraud counts of the indictment as insufficient on the ground that the government failed to allege sufficiently an effect on interstate commerce.[1] Kunzman contends that the district court erred in denying the pretrial motion to dismiss.

■ The sufficiency of an indictment is a question of law which we review de novo. *United States v. Brady*, 13 F.3d 334, 338 (10th Cir.1993). An indictment is sufficient if it contains the elements of the offense and apprises the defendant of the charges he must meet. *Id.* at 337. Counts 19 and 26 allege that securities fraud was accomplished "by the use of the means and instrumentalities of interstate commerce." Count 22 alleges that Kunzman "... did knowingly ... conduct ... a financial transaction affecting interstate commerce" in violation of 18 U.S.C. § 1956. Counts 15, 27 and 32 allege that Kunzman "... did knowingly engage ... in a monetary transaction, affecting interstate and foreign commerce ..." in violation of 18 U.S.C. § 1957. The indictment also specifically alleges an effect on interstate commerce through the use of interstate highways, the use of telephone and mails, and transactions involving banks and financial institutions engaged in interstate commerce. This is sufficient to allege an effect on interstate commerce.

■ Kunzman also contends that the district court should have granted his Rule 29 motion for judgment of acquittal on these counts because the evidence at trial was insufficient to establish the required interstate nexus. Although Kunzman did not argue

---

**1.** Specifically, Kunzman moved to dismiss Counts 15, 19, 22, 26, 27, and 32.

this point before the district court, we address the merits of this contention because an interstate nexus is essential to confer jurisdiction. *See United States v. Kelley*, 929 F.2d 582, 586 (10th Cir.), *cert. denied*, 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991) (requirement under section 1957 that the transaction be "in or affecting interstate commerce" must be met to confer jurisdiction on federal courts); *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 737 (10th Cir. 1974) (interstate nexus is required to confer subject matter jurisdiction over securities fraud actions).

### 1. Money Laundering Counts

#### a. Jurisdiction under 18 U.S.C. § 1956

■ In Count 22, Kunzman was charged with knowingly conducting a financial transaction involving the proceeds of specific unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Evidence of transactions involving financial institutions insured by the Federal Deposit Insurance Corporation (FDIC) is sufficient to meet the interstate commerce requirement under section 1956. *United States v. Peay*, 972 F.2d 71, 75 (4th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1027, 122 L.Ed.2d 172 (1993).

■ The government introduced as evidence of the financial transaction a check drawn on an account at the Central Bank of Greeley. The parties stipulated that the accounts of the Central Bank of Greeley were insured by the FDIC during the time the transactions took place. The stipulated facts were sufficient to confer jurisdiction under section 1956.

#### b. Jurisdiction under 18 U.S.C. § 1957

■ In Counts 15, 27, and 32, Kunzman was charged with money laundering in violation of 18 U.S.C. § 1957. A charge of money laundering under section 1957 must be "in or affecting interstate or foreign commerce" in order to confer jurisdiction on the trial court. *United States v. Lovett*, 964 F.2d 1029, 1038 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 169, 121 L.Ed.2d 117 (1992). A "minimal effect" on interstate commerce is sufficient to meet this requirement. *Id.*

■ The evidence at trial included numerous checks drawn on or deposited into federally insured banks. The government also introduced evidence that some of the money involved in these counts was used by Kunzman to pay for services from an out of state company. This evidence was sufficient to confer jurisdiction under section 1957. *See id.* at 1038 (evidence that defendant purchased items in interstate commerce with funds traceable to the transactions sufficient to confer jurisdiction); *Kelley*, 929 F.2d at 586 (evidence that automobile purchased by defendant was sold to her by local car agency involved in interstate commerce sufficient to confer jurisdiction).

### 2. Securities Fraud Counts

■ In Counts 19 and 26, Kunzman was charged with securities fraud in violation of 15 U.S.C. § 78j(b). To establish federal jurisdiction under section 78j, it "is sufficient that a device or contrivance be employed *in connection with* the use of the instruments of interstate commerce or the mails." *Kerbs*, 502 F.2d at 737 (emphasis in original). As long as the instrumentality used is itself an integral part of an interstate system, Congress may regulate intrastate activities involving the use of the instrumentality under the federal securities laws. *Id.* at 738 (use of the telephone system involving intrastate communications sufficient to confer jurisdiction under section 78j); *see also Reyos v. United States*, 431 F.2d 1337, 1348 (10th Cir.1970) (use of mails and use of checks deposited into banks engaged in interstate commerce sufficient to confer jurisdiction under section 78j).

■ The evidence at trial included testimony that victims of the fraudulent scheme used interstate highways and flew into Colorado from other states. The evidence also included numerous checks drawn and deposited in banks involved in interstate commerce. Accordingly, the district court had jurisdiction over the securities fraud counts.

## II. JURY SELECTION

### A. Improper Conduct by District Court

Kunzman contends that the trial judge's behavior during the jury selection process

violated his right to a fair trial by an impartial jury by creating a hostile atmosphere in which jurors could not speak their minds honestly. In support of this argument, Kunzman points to isolated statements made by the judge to prospective jurors. For example, in response to Ms. Holstein's statement that she had lost money in an investment similar to the one presented in this case, the trial judge asked, "You're still not all burned up about it, not ready to lash out?" When another prospective juror, Ms. Wilbers, expressed her concern that it would be difficult to be impartial because there were so many counts against Kunzman, the court asked, "Well, you're not saying that you would jump to the [sic] conclusions, are you?" Kunzman asserts that questions such as these discouraged prospective jurors from being honest about their possible biases.

■ "Whether an individual is qualified to serve as a fair and impartial juror is a decision that is firmly within the discretion of the district court." *United States v. McIntyre*, 997 F.2d 687, 697 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994). The trial judge responded to concerns raised by the prospective jurors and attempted to ascertain whether each person could be fair and impartial. The trial judge's isolated statements, when viewed in context, do not demonstrate an abuse of discretion.[2]

Kunzman's defense counsel was permitted to question prospective jurors. After doing so, he sought dismissal for cause of Ms. Wilbers because she had expressed doubt as to her ability to be fair. The juror was dismissed for cause. At the close of jury selection, Kunzman's counsel informed the trial court he was satisfied with the jury. He made no challenge for cause based on the impact on the jurors of the court's questions.

---

2. Excerpts from the voir dire examination are illustrative:

THE COURT: What happened, Mrs. Holstein?

MRS. HOLSTEIN: Okay. Well, several [investments], basically, businesses [sic]. One of them was a business in Indiana where it was $10,000, and they represented it one way, and by the time we got the computer and everything, it was supposed to come one way and it didn't, so I fought for that back.

And in regards to real estate, it was more like learning about real estate and buying real estate and buying the educational tools that was [sic] somewhere in Texas. I invested in that, and it was not honestly presented.

THE COURT: Because of these investments, do you think that if you were to sit on this jury, that you would have a particular sympathy with the people who may be called here to testify to that, "Yes, I gave the defendant a check, and here's what happened?"

MRS. HOLSTEIN: Well, I could definitely relate to it, probably.

THE COURT: Are you naturally a sympathetic person?

MRS. HOLSTEIN: Yes.

THE COURT: And are you still mad about your own investments?

MRS. HOLSTEIN: No, but I'm very aware of what to look for.

THE COURT: That seems reasonable. You're still not all burned up about it, not ready to lash out?

MRS. HOLSTEIN: No, but I will definitely fight for my rights.

THE COURT: Well, that's great. That's what you should do.

Reporter's Transcript, Vol. I at 47–48.

\* \* \* \* \* \*

THE COURT: Mrs. Wilbers, I will instruct you at the end of the case the Jury will have to consider each of these charges separately, and you must apply that standard of a reasonable doubt to each one.

MRS. WILBERS: It's just going to be real hard to do that. That's why I was trying to get my honest opinion of it, because it's so many different ones. And even though they're all different, they are towards the same person, and they are in the general scope. It's not like one is on laundering and one is on maybe poor repair work, or something like that. I'm just giving you my opinion.

THE COURT: Well, you're not saying that you would jump to the [sic] conclusions, are you?

MRS. WILBERS: I would try not to jump to conclusions, but when you have that much evidence—I know it's just evidence—you know, or charges. It doesn't mean he's guilty, but there's a lot of it for the balance to seem—

THE COURT: Are you saying you've just already made your mind up on what you've heard?

MRS. WILBERS: No.

THE COURT: As of this moment, he's presumed to be innocent. Can you give him that presumption?

MRS. WILBERS: I mean, because legally, you have to give him that presumption.

THE COURT: Absolutely right.

Reporter's Transcript, Vol. I at 83–84.

The district court did not abuse its discretion during the jury selection process.

### B. Batson *Challenge*

The district court denied Kunzman's objection to the government's use of a peremptory challenge to excuse the only African–American member of the jury venire. Kunzman contends that the district court failed to follow the procedure required in response to an objection pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial judge asked defense counsel if there were "any reason to believe that a black person would be more favorable to the Defendant than anyone else." The judge then asked the prosecutor to explain the basis for the exercise of the peremptory challenge against the African–American juror. After hearing the prosecutor's statement, the district court denied the *Batson* challenge.

 Under *Batson,* once a race-neutral explanation is offered by the prosecution for the exercise of a peremptory challenge against a potential juror, the trial court must determine whether the defendant has carried his burden of proving intentional discrimination. *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). We review de novo the question whether a prosecutor's explanation is race-neutral. *United States v. Johnson,* 941 F.2d 1102, 1108 (10th Cir.1991). We review a trial court's ruling regarding whether the defendant has proved intentional discrimination for clear error. *Id.*

 The prosecutor explained that he exercised a peremptory challenge against the juror because he lacked experience with real estate transactions, did not own any property, and had turned the management of his assets over to his children. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* (citation omitted). We conclude that because there was nothing inherently discriminatory about the prosecutor's explanation, the explanation was race-neutral.

 After hearing the explanation, the district court ruled that the potential juror "was challenged for other reasons than the color of his skin" and denied the *Batson* objection. Kunzman argues that the record shows intentional discrimination because the prosecutor did not challenge white jurors who had no real estate experience. This evidence is insufficient to demonstrate that the district court's ruling was clearly erroneous. *Id.* (best evidence on question whether counsel's race-neutral explanation should be believed is often demeanor and credibility of prosecutor, the evaluation of which lies "peculiarly within a trial judge's province") (citations omitted).

### III. EVIDENTIARY RULINGS

### A. *Admission of Evidence Pursuant to Fed.R.Evid. 404(b)*

 Kunzman contends that the district court erroneously admitted evidence of other acts. He argues that the evidence was inadmissible pursuant to Rule 404(b) of the Federal Rules of Evidence because it involved checks and deposit tickets related to transactions not specifically subject to the indictment. We review a trial court's decision to admit "other acts" evidence under Rule 404(b) for an abuse of discretion. *United States v. Rackstraw,* 7 F.3d 1476, 1478 (10th Cir.1993). There must be a clear and logical connection between the "other acts" evidence and the case being tried. *Id.* at 1479.

 The indictment charged Kunzman in separate counts with securities fraud, wire fraud, bank fraud, and money laundering stemming from an investment scheme (REMIC) and involving various accounts held by Mr. and Mrs. Kunzman (K & K Accounts). The district court held that evidence of items with Mr. Kunzman's signature, though not specifically related to a particular count of the indictment, was admissible under Rule 404(b) to show Kunzman's intent, knowledge, and absence of mistake or accident regarding how REMIC monies were being transferred into K & K accounts and misused. The court gave an appropriate limiting instruction to the jury, as requested by defense counsel. The evidence is clearly and logically connected to the various counts of

fraud and money laundering associated with misuse of REMIC monies. Accordingly, the district court did not abuse its discretion in admitting this evidence under Rule 404(b).

**B.** *Admission of Co-conspirator Statements*

■ Kunzman contends that the district court erroneously admitted co-conspirator statements pursuant to Fed.R.Evid. 801(d)(2)(E) because the court never found that a criminal conspiracy existed. We review a district court's findings on whether statements are made "during the course and in furtherance of a conspiracy" for clear error. *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir.1993).

■ During a pre-trial hearing, the prosecutor asked the court to find "by a preponderance of the evidence that there [was] a conspiracy *to commit a crime* . . . [b]etween Mr. and Mrs. Kunzman and Randy Meyers." After hearing arguments, the court found sufficient evidence "to prove by a preponderance of the evidence that there was a conspiracy between William Kunzman, Kay Kunzman and Randy Meyers to extract money from investors to put into REMIC type of investments." At the close of the government's case, the court again found as to all counts "that there was a conspiracy of which the defendant was a part and that the persons who made those statements were also [part of the conspiracy] and that the statements were made in the course of and in furtherance of the conspiracy."

Kunzman's contention that these findings are insufficient because the court never found the existence of a "criminal" conspiracy is without merit. The district court's findings were made within the context of the criminal charges against Mr. Kunzman. The court specifically stated that the finding of a conspiracy for purposes of Rule 801(d)(2)(E) was meant to apply to all counts. Kunzman has failed to demonstrate that the court's finding was clearly erroneous.

**C.** *Testimony of Bernadette Schmidt*

■ Kunzman contends that Bernadette Schmidt offered expert testimony which should have been held inadmissible because she lacked the knowledge, skill, experience, training or education required by Fed. R.Evid. 702. At trial, Kunzman's counsel objected to a portion of Ms. Schmidt's testimony on this ground. The trial judge ruled that Ms. Schmidt had "certainly qualified herself as an expert." We review a trial court's admission of expert testimony for abuse of discretion. *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.), *cert. denied*, 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991).

■ Expert testimony is properly admitted if the subject matter is closely related to a particular profession, business or science and is not within the common knowledge of the average layperson, and the witness has such skill, experience or knowledge in that particular field as to make it appear that his or her opinion would rest on substantial foundation and would tend to aid the trier of fact. *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1408 (10th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990) (citations omitted). Experience alone can qualify a witness to give expert testimony. *United States v. Markum*, 4 F.3d 891,. 896 (10th Cir.1993).

■ Ms. Schmidt testified that she is a vice president and business banker at the NorWest Bank in Greeley, Colorado and has been employed by that bank in various positions for almost 20 years. She also testified that she works with various types of bank records ranging from deposit and loan accounts to the financial accounts of the bank. She testified that the checks admitted into evidence had cleared through the intrastate clearing system by interpreting the numbers and bank stamps on the checks. The district court did not abuse its discretion in concluding that Ms. Schmidt was qualified to testify as an expert in light of her numerous years of experience in the banking industry.

## IV. SENTENCING GUIDELINES

**A.** *Grouping*

■ Kunzman contends that the district court erred in declining to group the fraud and money laundering counts together, which resulted in a one-level increase under

the Guidelines.[3] Kunzman argues that grouping of these counts is appropriate under U.S.S.G. § 3D1.2(b) and that the district court's reliance on *United States v. Johnson,* 971 F.2d 562 (10th Cir.1992), was misplaced because that case involved the application of section 3D1.2(d). We review a district court's legal interpretation of the guidelines *de novo. Id.* at 575.

The Sentencing Guidelines provide that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. Subsections (a)–(d) set forth the circumstances in which counts may involve substantially the same harm within the meaning of the rule. In *Johnson,* this court held that section 3D1.2(d)[4] could not be used to group together fraud and money laundering counts because of the difference in the nature and measure of harm resulting from these offenses. *Id.* at 576. The court reasoned that the harm from a money laundering transaction falls upon society in general and the measure of that harm is based on the value of the funds involved in the laundering transaction. *Id.* Fraud, on the other hand, involves harm to an individual and the measure of that harm is determined by the loss to the individual resulting from the fraud. *Id.*

The district court concluded that *Johnson* precludes grouping Kunzman's fraud and money laundering counts. We agree. Kunzman's attempt to distinguish *Johnson* by relying on section 3D1.2(b) instead of section 3D1.2(d) is without merit. Subsection (b) provides that counts involve substantially the same harm "[w]hen counts *involve the same victim* and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b) (emphasis added). *Johnson* clearly establishes that the "victim" of fraud, the defrauded individual, is not the same as the "victim" of money laun-

dering, society in general. *Id.* at 576. Thus, *Johnson* prohibits the grouping of fraud and money laundering counts under U.S.S.G. § 3D1.2, whether analyzed under subsection (b) or (d).

### B. *Loss Calculation*

■ Kunzman contends that the district court made various errors in calculating the loss amount to be applied under the sentencing guidelines to determine his offense level. We review factual findings supporting a district court's offense level calculation for clear error. *United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991).

■ The district court calculated the loss amount for money laundering as over $350,-000 based on the total value of laundered funds in the indictment. The trial judge included in the loss amount sums alleged in money laundering counts in which Kunzman was not charged. This calculation resulted in a three-level increase over the base level pursuant to U.S.S.G. § 2S1.1(b)(2)(D). Kunzman contends that the inclusion of sums involved in money laundering counts he was not convicted of constituted error. He argues that the court should have calculated the loss as $100,527.67, the total amount of money involved in the money laundering counts of which Kunzman was convicted. This would have resulted in only a one-level increase over the base level.

Section 1B1.3(a)(2) of the Sentencing Guidelines provides that the offense level may be determined on the basis of "... all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction...." All of the money laundering counts of the indictment were associated with the REMIC investment scheme. Thus, the district court's calculation was proper under U.S.S.G.

---

**3.** The 1993 *Guidelines Manual* was applied by the district court.

**4.** Subsection (d) provides that substantially the same harm occurs:

When the offense level is determined largely on the basis of the total amount of harm or loss,

the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d).

§ 1B1.3(a)(2).[5] The district court is not necessarily limited to the funds identified with the crime charged in the indictment, or which resulted in a judgment of guilty. *See Johnson,* 971 F.2d at 576 n. 10 ("funds associated with uncharged instances of money laundering can be added in to determine the offense level under section 2S1.1 if those acts are within the scope of relevant conduct under section 1B1.3(a)(2)").

■ Kunzman also challenges the district court's finding that the securities fraud resulted in a loss of $1.8 million, the total amount of principal invested in the fraudulent scheme. Kunzman contends that the court should have subtracted the $300,000 repaid to investors before the indictment. The district court's loss amount calculation for securities fraud was not clearly erroneous. Of the over $300,000 returned to investors, only approximately $50,000 was paid as a return of principal. It was reasonable for the court to calculate the loss based on the total amount of principal without subtracting any amount repaid, especially in light of the fact that the court chose not to add the interest due to investors based on the promises made to them. *See United States v. Lowder,* 5 F.3d 467 (10th Cir.1993) (interest may be added in fraud case where defendant promised victims specific rate of return).

■ Finally, Kunzman contends that the district court erred in calculating the loss amount from bank fraud as $800,000, the amount requested by the Kunzmans in their bank loan application. The court did not err in calculating the bank fraud loss as $800,000. This would have been the amount of loss if the loan had been granted. Thus, it was an appropriate "intended" loss calculation under section 2F1.1, Application Note 7.[6]

## V. RESTITUTION

■ The district court sentenced Kunzman to six years in prison and ordered him to pay $331,756.09 in restitution. The amount is to be paid following Kunzman's release from prison based on an installment schedule subject to the approval of his probation officer. Kunzman contends that the restitution order should be overturned because it is not within the realm of possibility for him to pay this amount. He points out that he is 55-years-old, he has been sentenced to six years in prison, and he is bankrupt. We review the amount of a restitution order for an abuse of discretion. *United States v. Patty,* 992 F.2d 1045, 1052 (10th Cir.1993).

■ The district court ordered restitution pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–64, which contains the requirements governing restitution orders. When determining the appropriate amount of restitution, "a sentencing court 'shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.'" *United States v. Rogat,* 924 F.2d 983, 985 (10th Cir.), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991) (quoting 18 U.S.C. § 3664(a)). The fact that a defendant is without financial resources at the time of sentencing is not a bar to a restitution order. *United States v. Gabriele,* 24 F.3d 68, 73 (10th Cir.1994). The order "will be upheld if the evidence indicates a defendant has some assets *or earning potential* and thus possibly may be able to pay the amount ordered." *Rogat,* 924 F.2d at 985 (emphasis added).

■ A sentencing court is not required to make specific findings as to a defendant's ability to pay, provided sufficient information was available to and considered by the court. *Gabriele,* 24 F.3d at 73. The district court did not make any specific findings as to Kunzman's ability to pay the amount of restitution ordered. However, during the sen-

---

**5.** The offenses must also be of a character which would require grouping under U.S.S.G. § 3D1.2(d). The money laundering charges associated with the REMIC scheme meet this requirement.

**6.** Note 7 provides in pertinent part:

"[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."

U.S.S.G. § 2F1.1, Application Note 7.

tencing hearing, the judge stated that he had considered the presentence report, the evidence and the witnesses' testimony at trial. The judge also stated that the amount of restitution was based only upon amounts specifically presented into evidence. This is sufficient to establish that the district court considered the information available to it. Thus, we must determine whether the court abused its discretion when it ordered restitution in the amount of $331,756.09 in reliance upon the information before it.

█ The following information was available to the court. Kunzman is a high school graduate with some college credit. He is 55-years-old and has been sentenced to prison for a six year term. He has two dependents: his wife Kay Kunzman, who was originally indicted as a co-defendant but who pled guilty prior to trial; and his 19-year-old son who is a sophomore in college. Currently, Kunzman has no physical or emotional problems. Prior to his conviction he averaged a net monthly income of $4,000.00 in commission as a self-employed salesman, although his current assets are minimal and his counsel refers to him as bankrupt. In his letter to the district court, Kunzman represented himself as a successful salesman with significant business acumen.

This court affirmed a restitution order requiring two defendants, a married couple, to pay $2,449,142.48 in *Rogat*, 924 F.2d at 984. Mrs. Rogat was sentenced to six months' imprisonment and five years' probation. *Id.* Mr. Rogat was to serve a three year prison sentence and five years' probation, although his prison sentence was deferred until his wife's was completed. *Id.* The court rejected the defendants' argument that in light of their negative net worth at the time of sentence, their four dependent children, one of whom has cerebral palsy, and their negative cash flow, the district court abused its discretion in ordering restitution in this amount. *Id.* The defendants had previously earned over $100,000 per year and had just established a new advertising and sales business. *Id.* This, along with the trial court's assessment of the Rogats as "very able, intelligent, well-educated, talented business people" was sufficient to meet the requirement that there

be some evidence in the record that the Rogats could satisfy the order. *Id.* at 986.

The information in the record is similar to the information that was before this court in *Rogat*. Although Kunzman is older and will serve a longer prison sentence than the Rogats, the amount of restitution he must pay is significantly smaller. Moreover, as in *Rogat*, Kunzman is not required to pay restitution immediately or before leaving prison. *See United States v. Clark*, 901 F.2d 855, 857 (10th Cir.1990) (abuse of discretion to order $153,762 in restitution *due immediately* where defendant has negative monthly cash flow of $249) (emphasis added).

The instant case can be distinguished easily from cases where this court has found an abuse of discretion. The district court did not order restitution with the expectation that Kunzman's earning potential would derive from illegal activities while in prison. *See United States v. Gilbreath*, 9 F.3d 85, 87 (10th Cir.1993) (abuse of discretion where district court anticipated the restitution would be satisfied from future loan sharking activities and defendant had no other earning potential from legal activities). This is also not a situation where the restitution ordered is entirely beyond the means of the defendant to pay. *See United States v. Patty*, 992 F.2d 1045, 1052 (10th Cir.1993) (abuse of discretion to order $7,644,498 in restitution where defendant was bankrupt at time of sentencing and had never earned more than $73,000 per year at father's now bankrupt business); *United States v. Kelley*, 929 F.2d 582, 587 (10th Cir.), *cert. denied*, 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991) (restitution order of $192,092 reversed where the 60 year old defendant who had no assets and had been sentenced to fifty months in prison had no future ability to pay the restitution in light of her education and past employment); *United States v. McIlvain*, 967 F.2d 1479, 1481–82 (10th Cir.1992) (government conceded and court agreed that defendant who sought Aid to Families with Dependent Children, had no assets, no source of income, and debt of $700 had no present ability or future earning capacity to pay $160,248 in restitution).

Mr. Kunzman has been a successful businessman in the past and has the potential to

be financially successful in the future. He is a high school graduate with some college credit who has earned approximately $50,000 per year as a salesman. The district court's order requires restitution to be paid in installments only after Kunzman is released from prison. In light of the information before the district court, it was not an abuse of discretion to require Kunzman to pay restitution in the amount of $331,756.09.

## VI. REMAINING ISSUES

The following issues were raised in the Appellant's Brief without supporting argument: denial of indictment-related motions; denial of motion to dismiss for destruction or failure to preserve potentially exculpatory evidence; denial of motions for judgment of acquittal; improper admission of summary evidence and witnesses; and, improper jury instructions. The brief states that these issues are raised in order to preserve them on appeal and refers this court to the pleadings and to the record for argument.

To raise an issue on appeal, the Federal Rules of Appellate Procedure require that the appellant's brief contain an argument with "... the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." Fed. R.App.P. 28(a)(6). "It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal." *American Airlines v. Christensen,* 967 F.2d 410, 415 n. 8 (10th Cir.1992); *see also Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1499 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993) ("[i]n general, we do not address issues not briefed"). The issues listed in this section, though nominally raised in the Appellant's Brief, have not been briefed and thus have not been raised adequately on appeal. Accordingly, we do not consider the merits of these issues.

AFFIRMED.