**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 30 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

TIMOTHY P. JANUSZ,

  Defendant-Appellant.

No. 96-1553

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-CR-192-S)

---

Michael W. Gross (Arthur M. Schwartz with him on the brief), of Arthur M. Schwartz, P.C., Denver, Colorado, for Defendant-Appellant.

Linda S. Kaufman, Assistant United States Attorney (Henry L. Solano, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before BRORBY, EBEL, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

  Defendant-Appellant Timothy Janusz appeals his conviction and sentence

on seven counts of wire fraud, 18 U.S.C. § 1344, arising out of his scheme to

defraud an elderly couple who had engaged him to assist in financial and estate

planning matters. Mr. Janusz was sentenced to sixty-three months in prison, with three years supervised release, and ordered to pay $184,530.70 in restitution. He contends the district court (1) committed plain error by failing to instruct the jury sua sponte on the defense of good faith; (2) erred in excluding testimony of the content of an overheard telephone conversation; (3) erred in denying Mr. Janusz's motion for judgment of acquittal based on insufficient evidence of wire fraud; (4) miscalculated the amount of loss under USSG § 2F1.1; (5) improperly refused to decrease his offense level for acceptance of responsibility under USSG § 3E1.1; and (6) erred in enhancing his sentence for taking advantage of unusually vulnerable victims under USSG § 3A1.1(b). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), and we affirm.

Background

Late in 1994 Mr. Janusz began to assist Kathleen Huffman with her income taxes. At the time, Mr. Janusz was doing business as a private financial consultant. He had a law degree and claimed to have practiced law in South Dakota. He had been licensed as a certified public accountant in South Dakota and Nebraska, although he allowed these licenses to lapse. He had been granted series sixty-three and series seven securities licenses, and had been employed by a large national accounting firm, where he was in charge of developing the personal

financial planning group, involving retirement and estate planning for individuals. He had taught law and business courses at several universities and a law school. He held himself out as a certified public accountant in Colorado.

Ms. Huffman received a substantial income from her grandparents, A. Carl and Bertha Cass. The Casses were eighty-eight years old and lived in Washington, DC. Ms. Huffman told Mr. Janusz that her grandparents had a lot of money and needed help with their estate planning. The Casses were also having increasing difficulty living by themselves in Washington; Mr. Cass was bedridden and entirely unable to handle financial affairs. Mr. Janusz began advising them. He prepared codicils, trust amendments, and other documents which they executed. Ms. Huffman arranged for the Casses to move to Colorado, where she could take care of them. The Casses had purchased a small house for her in Colorado, and Ms. Huffman's plan was for her grandparents to live in that house and to buy her a larger house with acreage next door. Mrs. Cass and Ms. Huffman sent Mr. Janusz a check for $568,000 to buy the larger house, with an additional $175,000 for the adjoining acreage. The $568,000 check did not clear in time for the closing, so another $575,000 was wired to Mr. Janusz so the closing could take place as scheduled. Mr. Janusz deposited the $568,000 check into one of his accounts and promised to return it. He never did. Instead of using the $175,000 to buy the parcel of land, Mr. Janusz executed a promissory note for

$90,000 in the name of KMA, Inc., a corporation he had created to protect Ms. Huffman's assets. He spent the remainder, loaning part without authorization to third parties.

When this amount dwindled Mr. Janusz began creating false documents to obtain more money from the Cass and Huffman accounts. Twice he forged Mrs. Cass's signature on letters which he faxed to a Vanguard mutual fund, requesting wires to his account of $320,000 and $250,000, respectively. He cut and pasted her signature from other documents. He called Dreyfus Funds, posing as A. Carl Cass, and requested $250,000 to be transferred to a Cass/Huffman account at Nationsbank. Then he traced Mrs. Cass's signature on a letter to Nationsbank, requesting the $250,000 be transferred to the account of a Montessori school he owned. Neither the Casses nor Ms. Huffman knew of the transfers. In an effort to cover up his fraud, Mr. Janusz created letters purporting to memorialize conversations he'd had with Mrs. Cass; she denied having had any such conversations.

In all Mr. Janusz transferred $2,263,000 to accounts under his control; of this he used approximately $776,399 for authorized purchases and expenses of the Casses and Ms. Huffman. He spent $109,748 for personal use. And he loaned, without authorization, $1,126,029 to third parties. In only two cases did he obtain promissory notes, and these were payable to his Montessori school. After the

fraud was discovered he obtained additional promissory notes, still payable to his Montessori school. When the Casses filed a civil suit he assigned the notes to them. The seven counts of wire fraud were based on various wire transfers of money to his accounts and to third-party borrowers, as well as faxed documents requesting unauthorized fund transfers, and the telephone call in which he posed as Mr. Cass.

Discussion

I

Mr. Janusz argues, first, that even though he did not request a good faith instruction at trial, and did not object to the court's failure to give one, it was plain error for the court not to give such an instruction sua sponte. See Fed. R. Cr. P. 52(b). We may correct an error not raised at trial under Rule 52(b) if there is (1) error (2) that is plain and (3) that affects substantial rights. See Johnson v. United States, 117 S. Ct. 1544, 1548-49 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). If these three elements are present we may exercise our discretion to notice forfeited error, "but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 1549 (quotation marks omitted; alteration in original). A defendant is entitled to a good faith instruction when he has interposed the defense of good faith, has requested the instruction, and when there is sufficient evidence to support it. See

United States v. Hopkins, 744 F.2d 716, 717 (10th Cir. 1984).

Mr. Janusz falls short on each element of this standard. Although his failure to request the instruction or object to the court's omission of it triggers our plain error review, see United States v. Brown, 996 F.2d 1049, 1052-53 (10th Cir. 1993), it is also relevant to whether error was committed at all. See United States v. Gallup, 812 F.2d 1271, 1279 (10th Cir. 1987). We find none.

At trial Mr. Janusz chose to admit his false representations, false pretenses, and pasting of signatures. He emphasized the admissions in both his opening and closing statements. See I Aplee. Supp. App. at 17; VIII Aplee. Supp. App. at 1439. His defense theory was that they were not part of a scheme to defraud but of an estate plan authorized by the Casses and for their ultimate benefit. He chose this trial strategy, declining to ask for the good faith instruction, for good reason. The evidence of his false pretenses was uncontroverted and devastating.[1]

---

[1] The good faith instruction for which he now argues says, in part,

> A defendant does not act in "good faith" if, even though he honestly holds a certain opinion or belief, that defendant also knowingly makes false or fraudulent pretenses, representations, or promises to others.
> The wire fraud statute is written to subject to criminal punishment only those people who knowingly obtain money or property or attempt to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

2 Edward J. Devitt et al., Federal Jury Practice and Instructions § 40.16 (1990).

It is also clear that Mr. Janusz was not entitled to the instruction because the evidence did not support it. By admitting his false pretenses, Mr. Janusz admitted, as a matter of law, that he did not act in good faith. A defendant's honest belief that a venture will ultimately succeed does not constitute good faith if, in carrying out the plan, he knowingly uses false representations or pretenses with intent to deceive. See United States v. Cochran, 109 F.3d 660, 665 (10th Cir. 1997) (quoting United States v. Themy, 624 F.2d 963, 965 (10th Cir. 1980); United States v. White, 673 F.2d 299, 304-05 (10th Cir. 1982). Further, a defendant is not entitled to a good faith instruction unless the evidence, if believed, has "the capacity to rebut all evidence of false and misleading conduct, all failures to disclose that which should have been disclosed and all matters that deceive and were intended to deceive another. A benign explanation of only some of the acts is insufficient . . . ." United States v. Smith, 13 F.3d 1421, 1426 (10th Cir.), cert. denied, 513 U.S. 878 (1994). The evidence thus precluded the instruction, and the court committed no error in failing to give it. See United States v. Pappert, 112 F.3d 1073, 1076-77 (10th Cir. 1997); Smith, 13 F.3d at 1424-26.

II

Mr. Janusz next argues the trial court erred in refusing to allow testimony regarding an intercepted telephone conversation. We review evidentiary rulings

for abuse of discretion.  See United States v. Reddeck, 22 F.3d 1504, 1508 (10th Cir. 1994).  Mr. Janusz has failed to preserve this issue for appeal, however, by not making an offer of proof at trial.  "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."  Fed. R. Evid. 103(a)(2).

Mr. Janusz attempted to elicit testimony from a witness who, in the course of a telephone conversation with Ms. Huffman, was put on hold when Ms. Huffman received an incoming call.  Inexplicably, the witness overheard both sides of Ms. Huffman's conversation with the second caller.  After testifying to these circumstances, and without any indication what the substance of the testimony might be, the court expressed concern that it might be illegal wiretap evidence, and indicated it was inadmissible.  The government then objected on the basis of hearsay, and the court responded that it was "academic."  VI Aplee. Supp. App. at 1097.  Without any response or offer of proof, the defense ended its examination of the witness.  Because there was no proffer and the substance and purpose of the evidence was not apparent from the context, Mr. Janusz may not predicate error on the ruling.  See Sorenson v. City of Aurora, 984 F.2d 349, 355 (10th Cir. 1993); United States v. Martinez, 776 F.2d 1481, 1485-86 (10th Cir.

1985).

### III

At the close of the government's case, Mr. Janusz moved for judgment of acquittal on Counts I and II on the ground of insufficient evidence of wire fraud. He argues it was error for the court to deny the motion. We review de novo the district court's denial of a motion for acquittal and ask "'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Pappert</u>, 112 F.3d at 1077 (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). We do not weigh conflicting evidence or consider the credibility of witnesses. <u>See</u> <u>id.</u>

To establish wire fraud under 18 U.S.C. § 1341, the government must prove (1) a scheme or artifice to defraud and (2) use of interstate wire communications to facilitate that scheme. <u>See</u> <u>United States v. Hanson</u>, 41 F.3d 580, 583 (10th Cir. 1994). In order to prove a scheme to defraud, the government must show "conduct intended or reasonably calculated to deceive persons of ordinary prudence or comprehension." <u>Id.</u> A wire is in furtherance of an alleged scheme if it is incident to an essential fact of the scheme, or a step in the plot. <u>See</u> <u>Schmuck v. United States</u>, 489 U.S. 705, 710-11 (1989).

Counts I and II allege wire transfers by Janusz of Cass/Huffman money to a third-party borrower on May 19 and June 12, 1995. Mr. Janusz contends these wire transfers took place prior to any scheme to defraud the Casses, because they predated his pasting of signatures and false pretenses to obtain additional money from the Casses. Thus, he argues, there is insufficient evidence of intent to defraud in connection with the May and June wires.

These wire transfers occurred, however, after Mr. Janusz improperly kept the $568,000 check and $175,000 wire from the Casses intended for purchasing the Colorado house and land, and it was this money that was involved in the transfers. Mr. Janusz repeatedly promised to return the money, in response to Ms. Huffman's repeated inquiries, but never did. See III Aplee. Supp. App. at 333-35. Viewing the evidence in the light most favorable to the government, a rational jury could find that as early as May and June Mr. Janusz was perpetrating a scheme with intent to defraud, and that the wires were a step in the plot.

IV

Mr. Janusz next challenges three aspects of his sentence. First, he argues the district court erred in calculating loss under USSG § 2F1.1(b)(1) by refusing to subtract from the loss calculation amounts that were ultimately recovered by the victims. We review the district court's legal interpretation of the guidelines

de novo, see United States v. Kunzman, 54 F.3d 1522, 1531 (10th Cir. 1995), and review its findings of fact for clear error, giving due deference to the district court's application of the guidelines to the facts. See United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir.) (citing United States v. Gomez-Arrellano, 5 F.3d 464, 465 (10th Cir. 1993)), cert. denied, 117 S. Ct. 596 (1996).

Loss, under § 2F1.1(b)(1), "is the value of the money, property, or services unlawfully taken." USSG § 2F1.1, comment. (n.7). However, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Id.

The district court specifically found that the loss was $1,556,601, calculated as follows: $2,263,000, the total misappropriated funds deposited in accounts under Mr. Janusz's control; minus $776,399, which he spent on authorized expenses of the Casses and Ms. Huffman; plus $80,000, which he attempted unsuccessfully to take from a Cass account after the fraud was reported and the account frozen. See X Aplee. Supp. App. at 1545-46. This calculation clearly reflected intended loss. Mr. Janusz argues the court should have deducted $250,824, which the Casses recovered from Mr. Janusz's Montessori school account after it was frozen, and amounts the Casses ultimately recovered from third-party borrowers after his crimes were discovered. Although these amounts were properly taken into account in determining the restitution Mr. Janusz owed

the Casses, the purpose of the loss calculation under the Sentencing Guidelines is to measure the magnitude of the crime at the time it was committed. The fact that the victims have been able to recover part of their loss after the discovery of the fraud does not diminish Mr. Janusz's culpability and responsibility for purposes of sentencing. See United States v. Johnson, 941 F.2d 1102, 1114 (10th Cir. 1991); United States v. Westmoreland, 911 F.2d 398, 399 (10th Cir. 1990).

Mr. Janusz also argues, relying on United States v. Gennuso, 967 F.2d 1460, 1462 (10th Cir. 1992), that because loss is to be calculated as the "net value, not the gross value, of what was taken," he should be given credit for monies the Casses eventually recovered. Id. The net loss rule of Gennuso and other cases merely requires the court to deduct from the loss calculation any value the defendant gave the victim at the time of the fraud. Here the court properly deducted the amount Mr. Janusz spent, during the scheme to defraud, on his victims' legitimate expenses. The record indicates by a preponderance that Mr. Janusz intended to deprive the Casses of the entire remainder of the money he took from them, by spending it on himself or loaning it to third parties with the agreement it would be paid back to him or his school in the future. See United States v. Smith, 951 F.2d 1164, 1166-69 (10th Cir. 1991).

Mr. Janusz next argues he was entitled to a reduction of his offense level for acceptance of responsibility, under USSG § 3E1.1. We review the denial of

this reduction for clear error, see United States v. McAlpine, 32 F.3d 484, 489 (10th Cir.), cert. denied, 513 U.S. 1031 (1994), and accord great deference to the sentencing judge because of his unique position to evaluate the defendant's acceptance of responsibility, see USSG § 3E1.1 comment. (n.5). The district court found that throughout the trial and sentencing hearing, Mr. Janusz insisted what he did was not wrong, see X Aplee. Supp. App. at 1550, and maintained he was merely negligent in the entire affair, see id.

Mr. Janusz claims essentially that because he returned much of the stolen money to the Casses before his conviction, testified voluntarily before a grand jury, provided an accounting of his activities with the Cass funds, and admitted cutting and pasting signatures and posing as Mr. Cass, it was clear error for the court to deny a reduction.

The evidence does not support Mr. Janusz. On two occasions well after the fraud was reported, he denied that the money in his school account belonged to the Casses. See XI Aplee. Supp. App at 1834-38. He offered to make a full accounting only on the condition that the Casses not pursue civil or criminal charges. See id. at 1834-36. He was held in contempt in the civil proceeding for not producing all of the promissory notes as he had promised, see id. at 1635-42, and refused to settle the civil action with the Casses until the day the trial was scheduled to begin, see id. at 1839-40. A reduction for acceptance of

responsibility is generally not intended for a defendant who denies guilt and puts the government to its proof at trial. See USSG § 3E1.1, comment. (n.2). Any determination that such a defendant has accepted responsibility must "be based primarily upon pre-trial statements and conduct." Id. The district court's denial of the reduction was not clearly erroneous and is supported by the record.

Finally, Mr. Janusz contends the district court committed clear error by enhancing his offense level for targeting vulnerable victims. See USSG § 3A1.1(b). He argues the court merely labeled the victims as elderly, and did not make particularized findings that the Casses themselves were "unusually vulnerable due to age." USSG § 3A1.1(b). He also argues there was no nexus between the victims' vulnerability and his crimes' ultimate success. See United States v. Lee, 973 F.2d 832, 834 (10th Cir. 1992).

The court made specific findings as to the vulnerability of both the Casses. Mr. Cass was "bedridden," "unable to tend for himself," "sick and extremely vulnerable." See X Aplee. Supp. App. at 1546. He died before trial at the age of eighty-nine. See id. The court observed Mrs. Cass give lengthy testimony at trial, and found she was "confused about many things, very susceptible to any suggestion from anyone, including the defendant. She was extremely trusting in many respects . . . ." Id. at 1547. The findings are amply specific and supported by the record. See United States v. Brunson, 54 F.3d 673, 676 (10th Cir.), cert.

- 14 -

denied, 116 S. Ct. 397 (1995).

The court specifically found a nexus between the Casses' vulnerability and the commission of the crimes. See X Aplee. Supp. App. at 1565-66. It would be difficult, indeed, to imagine a stronger nexus. The evidence indicates Mr. Janusz recognized the Casses' age, wealth, and diminished physical capacity, and, believing they would both soon die, see VII Aplee. Supp. App. at 1208; XI Aplee. Supp. App. at 1675, devised a scheme to separate them from their money by making loans which he would collect for himself after their death.

AFFIRMED.