**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN HENRY FIVAZ, a/k/a James Hardway,

    Defendant-Appellant.

No. 97-8082
(D.C. No. 96-CR-75-J)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR, BRORBY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Mr. John H. Fivaz, a/k/a John Hardway, appeals his sentence imposed after

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his guilty plea to conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

Mr. Fivaz participated in an extensive Ponzi scheme whereby he and others collected at least $7 million from 929 investors in return for promised yields of four percent to seven percent per month. Nearly all representations made to investors enticing them to invest were false. Instead of applying the funds as represented, Mr. Fivaz and others used the money from recent investors to pay "interest" payments to earlier investors. They encouraged potential investors to contact earlier investors who received substantial interest payments as a lure to investing in their scheme. Meanwhile, Mr. Fivaz siphoned substantial funds for his own use.

After his arrest, Mr. Fivaz entered into a plea agreement with the Government. In this agreement, the parties agreed the fraudulent conduct involved $7 million.

The calculation of Mr. Fivaz' sentence in his Pre-Sentence Investigation Report ("PSR") included a fourteen-level increase under United States Sentencing Guidelines Manual ("U.S.S.G.") § 2F1.1(b)(1)(O), because the total loss involved

in the fraudulent conduct was between $5 million and $10 million.  After taking into account other adjustments and the impact of the plea agreement, Mr. Fivaz' total offense level was 19, with a criminal history category of III, resulting in a recommended sentence between thirty-seven to forty-six months.  Mr. Fivaz made several written objections to the PSR, but he did not object to the loss calculation under § 2F1.1(b)(1)(O).

Just prior to Mr. Fivaz' sentencing hearing, at the court's request, the Government submitted a restitution memorandum showing a reported actual net loss of $589,846.50.  The Government calculated this amount from the reports of sixty-nine victims.

At sentencing, Mr. Fivaz objected to the fourteen-level increase under U.S.S.G. § 2F1.1(b)(1)(O), arguing the appropriate loss under the Guideline should be the amount of restitution, $589,846.50, not the total amount of money involved in his fraudulent conduct, $7 million.  The district court overruled Mr. Fivaz' objection.  It found, based on the plea agreement, the PSR, and the restitution memorandum, the total loss was in the neighborhood of approximately $7 million.  Applying the fourteen-level increase under § 2F1.1(b)(1)(O), the court sentenced him to forty months incarceration followed by two years of

supervised release.  Mr. Fivaz was also ordered to pay restitution of $589,846.50.

On appeal, Mr. Fivaz renews his argument that the district court erroneously used the total amount involved in his fraudulent scheme, $7 million, to compute the fraud loss for purposes of U.S.S.G. § 2F1.1(b)(1)(O), instead of the amount of restitution ordered, $589,846.50.[1]  We review the district court's legal interpretation of U.S.S.G. § 2F1.1 *de novo*.  S*ee United States v. Kunzman*, 54 F.3d 1522, 1531 (10th Cir. 1995).  Under U.S.S.G. § 2F1.1(b)(1) (1995),[2] the base offense level for a fraud offense is increased according to the amount of loss to the victims.  The Guidelines clearly do not limit the § 2F1.1 loss to the amount of restitution.  Unlike restitution, which must be measured by the actual losses sustained by victims as of the sentencing date, *see* 18 U.S.C. § 3663(b)(1), the loss calculation under § 2F1.1 measures "the magnitude of the crime at the time it was committed."  *United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998);

---

[1] The Government claims Mr. Fivaz waived this issue because he failed to raise it until the sentencing hearing.  Although we encourage objections to be made prior to sentencing, objections to a PSR may be made at the hearing without waiving the issue on appeal.  *See United States v. Deninno*, 29 F.3d 572, 580 (10th Cir.) (ruling failure to object to PSR prior to sentencing or at the hearing, waives the issue for appeal), *cert. denied*, 513 U.S. 1158 (1994).  Consequently, Mr. Fivaz did not waive this issue.

[2] The 1995 edition of the Guidelines Manual was used in this case.

*see also United States v. Messner*, 107 F.3d 1448, 1455 (10th Cir. 1997) (distinguishing between the amount of loss for restitution orders from "loss" for purposes of sentencing).

Mr. Fivaz also contends the district court incorrectly calculated the loss for purposes of § 2F1.1 because the $7 million figure was not reduced for payments made back to investors to reflect the net value of the loss. It is within the district court's discretion to determine the method of loss calculation it will use when calculating a loss for purposes of § 2F1.1. *See* U.S.S.G. § 2F1.1, comment. (n.8) (permitting the court to consider a number of factors in estimating the loss). We review the district court's factual determination for § 2F1.1 under the clearly erroneous standard, giving due deference to the district court's application of the Guidelines to the facts. *Janusz*, 135 F.3d at 1324.

The parties do not dispute that out of the $7 million invested, $6 million was paid to Mr. Fivaz, his co-conspirators, and investors. Nonetheless, relying on the plea agreement and the PSR, the district court concluded the intended loss was the $7 million since "all we have is the investment that was made by all of these individuals and the fact that everyone has acknowledged that funds returned to victims were not principal of the investment, but rather income." A court may

appropriately refuse to deduct interest payments paid to investors in calculating the investors' loss if it also chooses not to increase the loss for promised interest. *See Kunzman*, 54 F.3d at 1532. Mr. Fivaz claims he never stipulated that the funds returned to investors constituted interest. However, the district court relied on Mr. Fivaz' plea agreement, where Mr. Fivaz agreed the preliminary loss for purposes of § 2F1.1(b)(1) was approximately $7 million. The court also relied on the PSR, which indicated the $6 million withdrawn from the funds invested "includes monies used for alleged 'interest' payments made to lull investors into further participation in the [fraudulent] scheme as well as monies used to pay the salesmen/initiators commissions." Under these circumstances, the district court's conclusion the money returned to investors was interest was not unreasonable.

Furthermore, we note the district court relied on the restitution memorandum, which listed sixty-nine victims' net losses, out of 929 victims, as $589,846.50, to support its finding that over $7 million was invested. In light of the § 2F1.1 commentary, which allows the court to consider the number of victims and the average loss as to each victim, and the information contained in Mr. Fivaz' plea agreement and PSR, the court could have reasonably found a loss of $7 million. *See* U.S.S.G. § 2F1.1, comment. (n.8). Hence, we conclude the

district court's loss calculation was not clearly erroneous.

Accordingly, we **AFFIRM**.

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge