**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GRANT OSTMEYER,

Defendant-Appellant.

No. 03-3203
(D.C. No. 02-CR-10144-JTM)
(Kansas)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

Grant Ostmeyer pled guilty to one count of bank fraud and was sentenced

to thirty-three months incarceration. He appeals the district court's

determinations of loss amount and restitution due, as well as its refusal to depart

downward. We affirm.

Mr. Ostmeyer perpetrated a complicated, widespread, and multi-faceted

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

scheme, in which he fraudulently received loans from financial institutions based on misrepresentations and false statements, defrauded individuals who purchased cattle from him, sold the same heads of cattle to separate individuals, sold other people's cattle without their permission, falsified receipts, switched cattle ear tags, converted collateral to his family, and provided false bills for feeding cattle. Prior to sentencing, Mr. Ostmeyer objected to the loss calculation proposed by the Probation Office in the Presentence Investigation and Report (PIR). The district court conducted a sentencing hearing at which Mr. Ostmeyer, the probation officer who prepared the PIR, and several representative victims testified.

The court found an actual loss of $1.22 million, Aplt. App. at 335, after the victims received proceeds through civil suits, an arbitration hearing, defendant's bankruptcy, payments from the government, and sales of remaining collateral and seized assets. *See* Aple. Br. at 6; PIR at 6. Mr. Ostmeyer's counsel argued the victims' "net" or actual losses should be the amounts used for sentencing purposes under United States Sentencing Guideline § 2F1.1 (1998).[1] The court rejected this argument, finding an intended loss of $3.15 million, and sentenced

---

[1] The parties agreed the 1998 version of the sentencing guidelines should be used to calculate the loss amount. Under that version "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, n.8 (1998). Prior to 1998, the same paragraph was application note 7, which explains why some cases cited herein refer to note 7 and some to note 8. In 2001, section 2F1.1 was deleted and the guidelines specifically defined intended loss and actual loss in section 2B1.1.

Mr. Ostmeyer accordingly to thirty-three months.

We review the district court's application of the sentencing guidelines *de novo* and the court's factual determinations for clear error, "giving due deference to the district court's application of the guidelines to the facts." *United States v. Janusz,* 135 F.3d 1319, 1324 (10th Cir. 1998). "A district court's factual finding is clearly erroneous only if it is without factual support in the record or if [this] court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Patron-Montano*, 223 F.3d 1184, 1188 (10th Cir. 2000) (quotation and citation omitted).

The offense level for a crime of fraud is driven by the dollar value of the loss caused by the criminal conduct. *See* U.S.S.G. § 2F1.1 (1998). If intended loss can be determined and it exceeds actual loss, the court should use intended loss to calculate a defendant's offense level. *See id.* at n.8; *United States v. Smith*, 951 F.2d 1164, 1166 (10th Cir. 1991) ("The Guidelines increase a defendant's base offense level sentence for either actual or intended loss, whichever is greater."). The intended loss figure is used, even if it is significantly greater than actual loss, "to measure the magnitude of the crime at the time it was committed." *Janusz,* 135 F.3d at 1324. "The fact that the victims have been able to recover part of their loss after the discovery of the fraud does not diminish [a defendant's] culpability and responsibility for purposes of

sentencing." *See id.*

Mr. Ostmeyer admits that "if the intended loss [he] was attempting to inflict is higher than the actual loss, the intended loss would be used." *See* Aplt. Br. at 20. Nevertheless, he directs us to several cases for support of the proposition that "actual loss is the correct valuation of loss in this case," *id.* at 21, and actual loss should be determined by subtracting from the intended loss figure any amounts recovered by the victims. *See id.* at 21-22. Each case is inapposite.

For example, in *United States v. Haddock*, 12 F.3d 950 (10th Cir. 1994), the evidence suggested the defendant intended to repay the loans, which made the case "unlike those cases where the defendant did not intend to repay and the lender recovered some of the money in spite of the defendant's intention." *Id.* at 963. Moreover, *Haddock* cited with approval *United States v. Johnson*, 908 F.2d 396, 398 (8th Cir. 1990), in which the court held that

> [a]lthough the banks were able to recoup a substantial portion of their loans, we agree with the district court that a defendant's offense level should not turn on whether or not the banks recovered some of their potential loan losses. Rather, the focus for sentencing purposes should be on the amount of the possible loss which [the defendant] attempted to inflict on the banks.

*Id.* Unlike the loss in *Haddock*, the losses Mr. Ostmeyer intended are greater than the actual losses suffered, and can be determined. *See* Aplt. App. at 159-60. Intended loss is therefore the proper measure even under *Haddock*.

Belying any notion that Mr. Ostmeyer intended to repay the loans, this

record reflects that he actually secured loans with collateral and cattle that were either nonexistent or had been sold or pledged to other buyers. *See* PIR at 4-5. Although Mr. Ostmeyer testified that he self-reported double-selling cattle because he was "[h]oping to work out a financial arrangement that [he] could pay it off," Aplt. App. at 119-20, the district court expressed "serious concerns" about his credibility. *Id.* at 154. The record supports the conclusion that Mr. Ostmeyer did not intend to pay back his victims. He provided false statements and information to the financial institutions, misrepresented facts to individual victims, did not tell any of them what he was doing prior to getting caught, did not want anyone to find out, took steps to conceal his actions, and failed to provide one of the financial institutions with truthful and accurate information about the people to whom money was being loaned despite knowing it trusted him to do so. *Id.* at 124-25. Given this litany of misconduct, the "length of time that this went on, [and] the number of people who were involved, wholly apart from the dollar value," *id.* at 42, the district court reasonably concluded that Mr. Ostmeyer intended to permanently deprive his victims, resulting in an intended loss in the amount of the entire loan totals. *See United States v. Banta*, 127 F.3d 982, 984 (10th Cir. 1997).

Mr. Ostmeyer also cites *United States v. Copus*, 110 F.3d 1529 (10th Cir. 1997), which is distinguishable because it addressed loss calculation in the

context of a defendant making a false statement to a federally insured bank after acquiring a loan, in violation of 18 U.S.C. § 1014. Although fraudulent loan applications were part of the fraud Mr. Ostmeyer perpetrated, he was convicted of bank fraud in violation of 18 U.S.C. § 1344. Moreover, fraudulent loan application cases such as *Copus* are specifically governed by subsection (b) of application note 7, while loss calculations for crimes of fraud are generally governed by the main paragraph of application note 7. *See* U.S.S.G. § 2F1.1, n.7 and 7(b) (1997). We note nonetheless that under both the main paragraph and the subsection, if intended loss is greater than actual loss, intended loss is to be used for sentencing purposes. *See id.*

Mr. Ostmeyer's final authority, *United States v. Kunzman*, 54 F.3d 1522 (10th Cir. 1995), is completely unavailing. There, the district court was affirmed when it included for sentencing purposes losses alleged in uncharged counts, losses repaid to the victims, and the total intended amount of a fraudulent loan. *See id.* at 1531-32.

The application notes to guideline section 2F1.1 state, "[f]or the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, n.9 (1998). The district court sentenced Mr. Ostmeyer based on an intended loss of $3.15 million after considering sworn

victim loss statements and supporting documentation admitted into evidence, *see* Aplt. App. at 55, 192-210, victim testimony, *see* Aplt. App. at 68-105, and double-counted amounts, *see* Aplt. App. at 144.  Having reviewed the record carefully, we are not left with a firm conviction the court made a mistake in its findings.

Mr. Ostmeyer next alleges the district court erred in denying his request to depart downward from the sentencing guidelines based on the totality of his circumstances.  It is clear, however, that the district court recognized its authority to depart and declined to because of Mr. Ostmeyer's particular circumstances.  The district court unambiguously stated "I am also finding that you are not outside the heartland in any respect with respect to the Guideline range, and I am denying the downward departure in your case."  Aplt. App. at 164.  Because the district court's discretionary denial of the departure was based neither on an impermissible factor nor on an incorrect interpretation of the guidelines, we have no jurisdiction to review the decision.  *See United States v. Guidry*, 199 F.3d 1150, 1161 (10th Cir. 1999) (impermissible factors include race, sex, national origin, creed, religion, and socioeconomic status); *United States v. Castillo*, 140 F.3d 874, 887 (10th Cir. 1998) ("We have often held that we have no jurisdiction to review a discretionary determination of a district court not to depart from the sentencing guidelines.").

Finally, Mr. Ostmeyer contends the district court erred in calculating the amount of restitution he owed. The legality of a restitution order is reviewed *de novo*; the factual findings underlying the order are reviewed for clear error; and the amount of restitution is reviewed for an abuse of discretion. *United States v. Quarrell*, 310 F.3d 664, 676 (10th Cir. 2002). "A decision is an abuse of discretion only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *See United States v. Combs*, 267 F.3d 1167, 1176 (10th Cir. 2001) (citations and quotations omitted). The district court made specific findings that the probation office's determinations were accurate after adjustments for double-counting. *See* Aplt. App. at 159-161. The court noted the amount of loss was "established not only through the reports of the victims to Probation, but by other documentary evidence that's been presented over the course of this hearing." *Id.* at 160. In addition, the court heard testimony from two of the victims and the presentence investigator. *See id.* at 68-105; 105-117. The district court's findings are supported by the record and its order of restitution is within its discretion.

For the foregoing reasons, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
United States Circuit Judge