# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1422

_____

United States of America

*Plaintiff - Appellee*

v.

Gerard Leonard Roy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 16, 2018
Filed: September 12, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

PER CURIAM.

Gerard Roy was convicted of mail fraud, in violation of 18 U.S.C. § 1341, and transactional money laundering, in violation of 18 U.S.C. § 1957, and sentenced to 82

_____

[*]Chief Judge Smith and Judge Colloton file this opinion pursuant to 8th Cir. Rule 47E.

months' imprisonment. Roy now appeals, arguing that the district court[1] miscalculated the loss resulting from his crimes and erroneously applied the sophisticated means enhancement. We affirm.

## I. *Background*

From 2010 to 2015, Roy controlled and operated multiple construction companies. During this time period, he submitted bids for projects being undertaken by assorted public, quasi-public, and private entities in Minnesota. The bidding process for some of these projects required proof of surety bonds:

> For many large construction projects, bidding construction companies must have bonds that guarantee completion of the project, quality of the work, or payment to subcontractors and vendors. In cases that a project was not completed, of poor quality, or the construction company left subcontractors unpaid, the bonds would cover any claims and protect the construction clients from more expenses than had been bid and budgeted.

Presentence Investigation Report (PSR) at 2, ¶ 6, *United States v. Roy*, Case No. 0:15-cr-00303-MJD-SER (D. Minn. Sept. 13, 2016), ECF No. 33.

However, "Roy's criminal history and previous defaults on bonds prevented him from obtaining bonds for his construction projects." *Id.* at 2, ¶ 7. As a workaround, Roy submitted fraudulent "bond documents—including bid bonds, performance bonds, and payment bonds—which were purportedly issued by a surety on behalf of [Roy] and/or his company" in support of his bids. Plea Agreement at 3, *United States v. Roy*, Case No. 0:15-cr-00303-MJD-SER (D. Minn. May 25, 2016), ECF No. 30. "In so doing, [Roy] forged the signatures of the relevant sureties, witnesses, and public notaries." *Id.*

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

From 2010 until 2012, Roy failed to perform on four contracts obtained using bids that included fraudulent bonds. As there were, in fact, no sureties, the parties that had hired Roy spent, in aggregate, about $270,000 more than the amount of their contracts with Roy's companies to complete their projects. Their costs included reimbursements to Roy's unpaid subcontractors, rebidding expenses, and payments to those hired to complete the projects.

In 2012, Roy was convicted of two counts of felony drug possession in Minnesota state court. He was sentenced to 21 months' imprisonment in October 2012. Roy subsequently had Omni Construction, the company under which he was doing business at that time, declare bankruptcy.

Roy was released from prison in November 2013. Upon release, he returned to the construction business, conducting business through companies called RSI Associates and Restoration Specialists. Roy used new business names but engaged in the same disreputable business practices as before. He once again submitted falsified bond documents in support of his bids. This time, however, Roy's wrongdoing was discovered shortly after it began. He defaulted on six contracts, requiring the entities that hired him to incur expenses not covered by the fraudulent bonds. He was convicted of multiple forgery counts in Minnesota state court and sentenced to over a year in state custody.[2]

Roy was federally indicted in November 2015 on multiple fraud and financial crime counts. Pursuant to a plea agreement, Roy pleaded guilty to Counts 1 (mail fraud) and 9 (transactional money laundering) of the indictment. Following Roy's

---

[2]These convictions occurred in 2014 and 2015 and appear to have been disposed of by a multi-party plea agreement. They took place in the district courts of Hennepin County, Dakota County, and Scott County. Though the dates of conviction and sentencing and terms of imprisonment are different, each sentence had a projected release date of December 29, 2016.

guilty plea, the probation office prepared a PSR. The PSR calculated the loss attributable to Roy by adding the amounts above the contract price that those who had hired Roy had spent. Using this method, the PSR determined that Roy caused a loss of about $821,000. This resulted in a 14-level enhancement. *See* U.S.S.G. § 2B1.1(b)(1)(H). The PSR also included a two-level sophisticated means enhancement. *See id.* § 2B1.1(b)(10)(C).

Roy objected to the loss amount. He argued that the manner of calculation failed to properly account for the fact that his bids were substantially lower than those of the second-place bids. He and the government filed a joint stipulation setting forth their preferred calculation method:

(a) Government Loss Method: totaling the additional expenses incurred by the contracting entity and any unpaid expenses incurred by subcontractors above and beyond the bid submitted by the defendant's company; or

(b) Defendant Loss Method: totaling the additional expenses incurred by the contracting entity and any unpaid expenses incurred by subcontractors above and beyond the bid submitted by the defendant's company, but offsetting those amounts by the next lowest bid that the contracting entity received.

Suppl. Sentencing Stipulations at 1, *United States v. Roy*, Case No. 0:15-cr-00303-MJD-SER (D. Minn. Jan. 25, 2017), ECF No. 54 (bold omitted). Roy asserted that in multiple instances, the difference between his bid and the second-place bid was so great that even with the cost overruns that his default caused, his alleged victims actually saved money by hiring him. Roy also objected to the sophisticated means enhancement.

The district court rejected Roy's loss-amount argument, stating that "[i]f the Defendant had properly obtained the bonds, such bonds would have covered the losses he caused, and his victims would have received performance of the contract at the

price promised by Defendant. Thus, the second lowest bid is irrelevant to the Defendant's crime." Statement of Reasons at 6, *United States v. Roy*, Case No. 0:15-cr-303-MJD-SER (D. Minn. Feb. 8, 2017), ECF No. 63. It therefore adopted the government's loss method.

> The court also imposed the sophisticated means enhancement
>
> > because [Roy], in addition to falsifying bonds, used a rotating front of corporate entities to carry out his scheme to fraudulently obtain construction projects. He also used a myriad of false documents when submitting the fraudulent bonds, used a fraudulent notary stamp and forged the signatures of the sureties, witnesses and public notaries who had purportedly guaranteed the bonds. Defendant also used these means on several occasions.

*Id.* at 8 (citations omitted).

These findings resulted in a total offense level of 21; coupled with Roy's criminal history score of VI, his Guidelines range was 77 to 96 months' imprisonment. Sentencing took place shortly after Roy's 14 months in state custody. After taking into account time served, the court imposed a sentence of 82 months' imprisonment.[3]

---

[3]The court also ordered Roy to pay restitution. However, Roy filed for bankruptcy before sentencing, and the district court decided to wait until it had more information about Roy's finances before entering a final restitution order. *See, e.g.*, Joint Mot. for Extension of Time to Set Restitution, *United States v. Roy*, Case No. 0:15-cr-00303-MJD-SER (D. Minn. Oct. 30, 2017), ECF No. 78. The amount of restitution was still not set at the time this case was submitted to this court.

## II. *Discussion*

On appeal, Roy makes two sentencing challenges. He asserts that the district court selected the wrong method of loss calculation and that the facts of his case did not warrant the sophisticated means enhancement. We reject both arguments.

### A. *Loss Calculation*

"We review the district court's loss calculation under U.S.S.G. § 2B1.1(b)(1) for clear error, affording appropriate deference to the district court's determination based on its unique position to assess the evidence and estimate the loss." *United States v. Jenkins*, 578 F.3d 745, 749 (8th Cir. 2009) (citation omitted). Further, "[a] district court's determination of loss need not be precise, although it must reflect a reasonable estimate of the loss." *Id.* (citations omitted).

In a fraud case, the offense level is determined in part by the amount of loss for which the defendant is responsible. U.S.S.G. § 2B1.1. "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1, cmt. (n.3(A)(i)). The relevant note on "Credits Against Loss" states that "[l]oss shall be reduced by . . . [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant." *Id.* § 2B1.1, cmt. (n.3(E)(i)). Further, "The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." *Id.* § 2B1.1, cmt. (n.3(C)) (citations omitted).

The district court's use of the expenses above the amount of Roy's bid as the measure of loss was a determination that Roy's winning bids represented the "fair market value of . . . the services rendered . . . by" him. *Id.* § 2B1.1, cmt. (n.3(E)(i)). We find no error in this conclusion. Fair market value is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *Value*,

Black's Law Dictionary (10th ed. 2014). We are satisfied that the accepted bids meet this definition. Therefore, we see no clear error in the court's determination that the amount of the accepted bids represented the fair market value of the services rendered. Roy's arguments to the contrary are unconvincing.

Roy contends that a decision from one of our sister circuits compels a different result. *See United States v. Spano*, 421 F.3d 599 (7th Cir. 2005). It does not. We are not bound by *Spano*, and it is unpersuasive on these facts. *Spano* concerned a conspiracy in which numerous defendants, several of whom occupied positions in the government of the town of Cicero, Illinois, defrauded the municipality by creating SRC, a claims-processing company, to handle its employees' health insurance claims. *Id.* at 602. The sentencing court calculated the loss by subtracting $22 million, the amount of actual, legitimate claims SRC paid out, as well as the costs associated with processing those claims, from the $33.8 million Cicero paid the company. *Id.* at 607–608. Though the Seventh Circuit remanded due to a mathematical error, it held this approach a sound one, stating:

> Had the Town hired a legitimate claims processor, the price charged the Town by the processor would have reflected his costs. The loss to the Town on the legitimate claims was the difference between what it paid SRC to process them and what it would have paid a legitimate processor to process them. A defendant is entitled "to deduct from the loss calculation any value the defendant gave the victim at the time of the fraud." *United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998).

*Id.* at 607. Roy states that applying his suggested approach to his case is the only way to account for the value he provided the victims and prevent them from receiving a windfall.[4]

---

[4]As noted above, the district court had not set a restitution amount when this case was submitted to this court. Though Roy's briefing does not expressly discuss restitution, we presume that because, in a vacuum, Roy's offense level has no effect

We disagree. Roy has not shown the district court's chosen method produced a windfall or otherwise failed to account for the value of his services. In this instance, what the parties bargained for provided a reasonable basis for determining the loss Roy's crimes caused his victims. We see no clear error in the district court's loss determination.

B. *Sophisticated Means*

Roy argues that the district court erroneously applied the two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C). Roy asserts that his conduct was no more sophisticated than the average fraud scheme. We disagree.

> Although there is no mechanical test to determine whether a scheme is sufficiently sophisticated to qualify for the enhancement, we have in the past looked at the following factors: (1) the overall length of the scheme; (2) the use of forged or false documents; and (3) the use of Ponzi-type payments. Overall, the sophistication of the offense conduct is associated with the means of repetition, the coordination required to carry out the repeated conduct, and the number of repetitions or length of time over which the scheme took place.

*United States v. Meadows*, 866 F.3d 913, 917–18 (8th Cir. 2017) (cleaned up).

Over a five-year period, Roy submitted fraudulent documents in support of at least ten bids for projects in several locations across the State of Minnesota. Further, he did business under multiple company names. The district court did not clearly err in imposing the sophisticated means enhancement. *See id.* at 917.

---

on his victims' bottom lines, the "windfall" argument presented with regard to loss amount is intended to apply to the district court's eventual consideration of the related issue of restitution.

### III. *Conclusion*

Finding no error, we affirm.

_____